IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| HUSAM ALDIM MATHEWS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION NO. 5:11-CV-133 (MTT) |
| | ) |
| DEPUTY MICHAEL BROCE, | ) |
| | ) |
| Defendant. | ) |
| | ) |

### ORDER

This matter is before the Court on Defendant Deputy Michael Broce's Motion for Summary Judgment. (Doc. 15). For the following reasons, the Motion is **GRANTED**.

### I. FACTUAL BACKGROUND

This action arises out of a traffic stop that took place on the morning of April 8, 2009. Deputy Gary Long with the Butts County Sheriff's Office observed Plaintiff Husam Aldim Mathews following a vehicle too closely while traveling southbound on Interstate 75. Long turned on his sirens, and the Plaintiff pulled over to the left median next to the "fast lane." Long testified that the Plaintiff's eyes were "bloodshot, very glassy, and the top of his eyelids were swollen, which is a common sign in what I've noticed, people under the influence of marijuana." (Deposition of Gary Long, at 36). The Defendant arrived at the scene to assist Long and parked behind Long's patrol vehicle a short time later. The Defendant brought Kilo, his drug-sniffing dog, who alerted to the driver's side of the Plaintiff's vehicle.

Before Long and the Defendant began a search of the Plaintiff's vehicle, Long had a discussion with the Plaintiff who was crouched down with his pitbull puppy between Long's

patrol vehicle and the Defendant's patrol vehicle. After Long walked off, the Plaintiff remained in that position and appeared to pull something out of his jeans. He looked over the trunk of Long's patrol vehicle, suggesting he did not want to be seen. When the Defendant and Kilo walked toward the Plaintiff, the Plaintiff picked up his puppy and walked in the opposite direction.

After a few minutes, the Plaintiff returned to the same spot between the patrol vehicles, crouched down, reached inside his jeans, pulled something out, and threw it beneath Long's patrol vehicle. The Plaintiff claims he discarded an open, glass bottle of Hennessy cognac from which he had not been drinking. Long and the Defendant claim he had a bag of marijuana.

The Defendant noticed that the Plaintiff had moved away from the search and ran to the area between the patrol vehicles with his TASER in hand. The Plaintiff, still crouched down, sensed someone was coming from the driver's side, so he simultaneously turned his head toward the Defendant and began to stand upright. When the Defendant came around the corner of Long's trunk, the Plaintiff –then 6'0", 200 pounds– was in the process of getting up and facing the Defendant. The Defendant shot the Plaintiff with a TASER in his left arm[1] and the Plaintiff took a few steps backward and landed on his stomach near the edge of the fast lane. The Plaintiff's head was dangerously close to the fast lane. The Defendant immediately pulled the Plaintiff up and moved him closer to the grassy area near the median.[2] Long then ran over to assist the Defendant.

---

[1] The Plaintiff does not know whether it was his left or his right arm. (Doc. 19, Deposition of Husam Mathews, at 161-162).

[2] At this point, the Plaintiff and the Defendant can no longer be seen on the Defendant's patrol vehicle video.

The Defendant claims he ordered the Plaintiff to place his hands behind his back, but the Plaintiff failed to comply and wiggled on the ground. The Defendant claims he then applied a tase in "drive stun" mode.[3] The Plaintiff denies he was resisting arrest, and claims he was tased in his mid-back after being handcuffed.

Long moved his patrol vehicle slightly forward. Long returned to the area between the patrol vehicles and picked something off the ground. The Defendant walked over with a clear plastic bag, bent down, and assisted Long.[4] It turns out the officers were picking up marijuana, not a bottle of cognac. At around the 15:36 mark on the Defendant's patrol vehicle video, there is an image of Long holding a large, clear plastic bag filled with a dark, thick, grassy substance.

After the officers finished bagging the evidence, the Plaintiff asked what kind of gun he was shot with. The Defendant informed him that it was a TASER and said, "Doesn't feel good, does it?" (Michael Broce Patrol Vehicle Video pt. 1, at 16:10-11). The Plaintiff responded, "Hell naw, I thought I was shot." (Michael Broce Patrol Vehicle Video pt. 1, at 16:12-13). The Plaintiff pretended the marijuana was not his, to which the Defendant responded, "The weed, I saw you put that weed [trails off]." (Michael Broce Patrol Vehicle Video pt. 1, at 16:20-21). The Defendant followed up, "You got caught man, charge it to

---

[3] A TASER can be used in either probe mode or drive stun mode. The former is "classified as an electro-muscular disruptor when used to fire small probes attached to the weapon with thin wires because, in that mode, it overrides the central nervous system and makes muscle control impossible. The TASER can also be used as a pain compliance weapon in what is called the 'drive stun' mode. In the 'drive stun' mode, the weapon is pressed against a person's body and the trigger is pulled resulting in pain (a burning sensation) but the 'drive stun' mode does not disrupt muscle control." *Hoyt v. Cooks*, 672 F.3d 972, 976 n.4 (11th Cir. 2012). This description of TASER operations is consistent with the officers' deposition testimony. *See* (Doc. 23, Deposition of Michael Broce) (describing two TASER modes); (Deposition of Gary Long) (same). The typical TASER, which is what the Defendant had, fires two probes when in probe mode. (Doc. 23, Deposition of Michael Broce, at 15-16); (Deposition of Gary Long, at 58-60).

[4] At this point, the audio comes on the Defendant's patrol vehicle video for the first time. The Defendant likely unmuted the microphone on his belt when he bent over.

the game." (Michael Broce Patrol Vehicle Video pt. 1, at 16:27-29). An officer asked the Plaintiff if he had any more marijuana in his jeans and told him that he was looking at a felony. The Plaintiff was asked to pull up his shirt, and he was surprised that the TASER left a mark. When asked if he really thought he had been shot with a firearm, the Plaintiff responded, "Did you see how I screamed? [screams]." (Michael Broce Patrol Vehicle Video pt. 2, at 1:31-34). The officers laughed and told him "no hard feelings." (Michael Broce Patrol Vehicle Video pt. 2, at 1:35). The Plaintiff asked if it was too late for him to get off, and an officer told him that he would have been let go if he had not lied about the marijuana. The Plaintiff, who apparently had asked the question jokingly, was very surprised at the response. The officers also discussed using the Plaintiff in a drug operation before the audio went out again.

The Plaintiff went to the emergency room five days after the incident. His emergency room records reveal he was in "no acute distress" with "no redness no swelling noted [and] no drainage noted." (Doc. 15-1, at 6-7). All the Plaintiff's wounds healed in approximately two weeks. The Plaintiff claims that as a result of the April 8, 2009, events, he fears law enforcement officers. The Plaintiff also alleges that he has post-traumatic stress disorder and that his hair, which is braided, began thinning and falling out, but he has provided no medical evidence to support this claim.

The Plaintiff was charged with felony possession of marijuana.[5] The charge was dismissed because the prosecution could not find the Defendant's patrol vehicle video. (Deposition of Gary Long, at 39-40). At some point after the charges were dismissed, law enforcement authorities found the patrol vehicle video.

---

[5] There is no evidence that the Plaintiff moved to suppress the video or the marijuana.

The Plaintiff filed this action on April 7, 2011, and initially brought federal claims against Long and the Defendant for unlawful arrest, unlawful search, malicious prosecution, excessive force, and state claims against Long and the Defendant for false imprisonment, illegal search, and battery. The Parties agreed to dismiss Long as well as all claims against the Defendant except for the federal excessive force claim, state battery claim, and state excessive force claim.[6]  (Doc. 14).

The Defendant moved for summary judgment on all claims. The Defendant contends the TASER was used once in probe mode and once in drive stun mode, a claim supported by data downloaded from the device that shows it was used for 5 seconds and 7 seconds, respectively.[7]  (Doc. 15-2, at 5-9). The Plaintiff did not proffer any evidence on how many times the TASER was used or the mode of the subsequent tase, but submitted identical "affidavits"[8] from his parents stating that he had approximately 4 to 6 TASER wounds in his mid-back area and one TASER wound on his arm. There are no pictures of the Plaintiff's back and he has disposed of the clothing worn on the day of the incident.

---

[6] It is not clear from the Complaint that the Plaintiff brought a state excessive force claim, but the Parties agree that it is a claim before the Court.

[7] Although the Plaintiff does not formally object to the TASER report and did not move to strike the report, his brief, liberally construed, can be read to raise a hearsay objection. This objection will be addressed below.

[8] Although the Defendant does not object to the "affidavits," they clearly are improper. Fed. R. Civ. P. 56(c)(4) states, "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Here, the "affidavits" by the Plaintiff's parents do not establish they are based on personal knowledge. Nor do the "affidavits" establish the basis for their purported testimony that the Plaintiff's wounds were caused by a TASER. Further, they have not laid a foundation of competency on why "[a]ll of the Taser wounds resulted from excessive and improper usage of police Taser weapons." (Doc. 22-2, at 1-2).

## II.  DISCUSSION

### A.  Motion for Summary Judgment Standard

Summary judgment must be granted if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material facts and that the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  "A factual dispute is genuine only if 'a reasonable jury could return a verdict for the nonmoving party.'"  *Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002) (quoting *United States v. Four Parcels of Real Prop.*, 941 F.2d 1428, 1437 (11th Cir. 1991)).  The burden rests with the moving party to prove that no genuine issue of material fact exists.  *Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d at 1224.  The district court must "view all evidence in the light most favorable to the nonmoving party, and resolve all reasonable doubts about the facts in its favor."  *Id.*

### B.  Fourth Amendment Excessive Force Claim

The Plaintiff argues the Defendant's use of the TASER amounted to excessive force.  With regard to the first use of the TASER, the Plaintiff argues the Defendant failed to issue a warning.  With regard to subsequent use of the TASER, the Plaintiff alleges he was tased repeatedly.  The Defendant argues he is entitled to qualified immunity on this claim.

"Qualified immunity offers complete protection for individual public officials performing discretionary functions 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  *Sherrod v. Johnson*, 667 F.3d 1359, 1363 (11th Cir. 2012) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  "There can be no doubt" that deputies effectuating an arrest are performing discretionary duties.  *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th

Cir. 2002). "'Once discretionary authority is established, the burden then shifts to the plaintiff to show that qualified immunity should not apply.'" *Edwards v. Shanley*, 666 F.3d 1289, 1294 (11th Cir. 2012) (quoting *Lewis v. City of West Palm Beach,* 561 F.3d 1288, 1291 (11th Cir. 2009)). To meet this burden, a plaintiff must establish that "the officer's conduct amounted to a constitutional violation" and "the right violated was 'clearly established' at the time of the violation." *City of West Palm Beach*, 561 F.3d at 1291. The clearly established law must provide a defendant with "fair warning" that his or her conduct deprived the plaintiff of a constitutional right. *Hope v. Pelzer*, 536 U.S. 730, 739-41 (2002). Clearly established precedent in this Circuit only applies to opinions of the United States Supreme Court, the Eleventh Circuit, and the highest court of the pertinent state. *McClish v. Nugent*, 483 F.3d 1231, 1237 (11th Cir. 2007). This two-step analysis may be done in whatever order is deemed most appropriate for the case. *City of West Palm Beach*, 561 F.3d at 1291 (citing *Pearson v. Callahan*, 555 U.S. 223 (2009)).

The Court chooses to start with the clearly established prong of qualified immunity analysis. Instead of providing cases that clearly established a constitutional violation on April 8, 2009, the Plaintiff attempts to distinguish numerous cases holding that rights allegedly violated were not clearly established. The only case the Plaintiff cited that could have clearly established a constitutional violation on April 8, 2009, is *Buckley v. Haddock*, 292 Fed. Appx. 791 (11th Cir. 2008).[9] In *Buckley*, a law enforcement officer stopped a driver for speeding at night on a two-lane highway. The driver refused to sign the ticket and told the officer to arrest him. The officer handcuffed the 6'2", 180 pound driver who then sat behind his vehicle with his legs crossed. Because it was dark and they were near

---

[9] Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir. R. 36-2.

-7-

the side of the highway, the officer instructed the driver to get up. The driver refused, and the officer tased him in drive stun mode. The officer asked the driver to get up again, and after the driver refused, the officer tased him in drive stun mode again. The officer then called for backup and after being unable to lift the driver, he tased the driver a third time in drive stun mode. Once backup arrived, the officers were able to get the driver into the patrol vehicle without incident. The three tasings, all in drive stun mode, caused sixteen small burn marks.[10]

The district court denied summary judgment to the officer, but the Eleventh Circuit reversed, holding that there was no constitutional violation and the law was not clearly established. Judge Martin dissented, arguing the Court should have affirmed the district court because there was a constitutional violation and it was clearly established that the officer's force was unconstitutional. The Plaintiff cites Judge Dubina's concurrence, which concluded that the third use of the TASER was unconstitutional, but the violation was not clearly established.

There are a few things wrong with the Plaintiff's citation to *Buckley*. First, and most obviously, the facts are very favorable to the Defendant, and the case is cited throughout his briefs. Next, even if Judge Dubina's opinion is controlling, he only held that the third use in drive stun mode on a handcuffed individual was unconstitutional, presumably because the officer had called for backup at that time. Finally, it is not even clear whether unpublished opinions, which are not considered binding precedent, can constitute clearly established precedent in this circuit. Other circuits are split on this issue. *See Green v. Post*, 574 F.3d 1294, 1305 n.10 (10th Cir. 2009) (discussing how unpublished opinions

---

[10] If these are typical injuries, then it means that a single drive stun use can yield approximately 5 wounds.

-8-

cannot constitute clearly established precedent in the Fourth and Tenth Circuits, but may be used in the Sixth and Ninth Circuits). At most, it can only be said that tasing a passively-resisting-handcuffed individual for a third time is a constitutional violation if backup has been called.

Here, there is no need to discuss the first use of the TASER at length. The Plaintiff walked to the area between the patrol vehicles while the officers searched his vehicle and crouched down. Once the Defendant ran over to the area, the Plaintiff began to stand up and face the Defendant, and the Defendant tased in him probe mode. The Plaintiff cites one Georgia Court of Appeals case and one Middle District of Florida case in a footnote for the proposition that a warning is required, but Eleventh Circuit precedent suggests the opposite. *See McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1245 (11th Cir. 2003) ("[The plaintiff] argues that the Constitution plainly prohibited an application of pepper spray to a suspect of a violent felony without first giving the suspect a warning and an opportunity to submit. We read no such requirement into the Constitution."). Here, the Defendant encountered a suspiciously acting suspect whose body movements a reasonable officer could have perceived as threatening. Thus, the Defendant did not have fair warning that he would deprive the Plaintiff of a constitutional right by tasing him.

The subsequent use of the TASER was not captured on the Defendant's patrol vehicle video, and thus the Court must rely on the testimony of the Parties. The Plaintiff claims he was handcuffed then tased, but the Defendant claims the Plaintiff was tased because he had to struggle to handcuff the Plaintiff. The Plaintiff concedes that he was wiggling around on the ground before he was handcuffed, but argues his movements were not volitional:

>    Q:    When you went to the ground, were you wiggling around or were you dead still?
>
>    A:    No, I was wiggling around like I was getting electrocuted. The only movement's by the taser.

(Doc. 19, Deposition of Husam Mathews, at 179). The Plaintiff claims he was handcuffed "a very short period of time" after he hit the ground. (Doc. 19, Deposition of Husam Mathews, at 178). The Plaintiff alleges the tasing resumed 2-3 seconds after he was handcuffed. *See* (Doc. 19, Deposition of Husam Mathews, at 180) ("It was after I was handcuffed. I would say -- I guess to get me handcuffed -- he handcuffed me and then momentarily after I was handcuffed. When I say momentarily, I mean two seconds, three seconds. It was kind of like quickly get the handcuffs on real quick and continue tasing. Stop for a second just to get the cuffs on all the way and then keep tasing."). Thus, viewed in the light most favorable to the Plaintiff, he was tased momentarily after he was handcuffed, which occurred very shortly after he was wiggling around on the ground.

The Court notes that there are serious issues regarding the Plaintiff's credibility. "[A]s a general rule, a district court may not discredit a witness's deposition testimony on a motion for summary judgment, because the assessment of a witness's credibility is a function reserved for the jury." *Fincher v. Depository Trust & Clearing Corp.*, 604 F.3d 712, 725 (2d Cir. 2010). "To be sure, there is an exception for 'the rare circumstance where the plaintiff relies almost exclusively on his own testimony, much of which is contradictory and incomplete.'" *Id.* (quoting *Jeffreys v. City of New York*, 426 F.3d 549, 554 (2d Cir. 2005); *see also Shabazz v. Pico*, 994 F. Supp. 460, 470 (S.D.N.Y. 1998) (Sotomayor, Judge) ("[I]n the context of summary judgment, it is [a court's] duty to assess the facts presented in a light most favorable to the non-moving party, but not to weigh the

credibility of the parties.  However, when the facts alleged are so contradictory that doubt is cast upon their plausibility, [the court is] authorized to pierce the veil of the complaint's factual allegations, dispose of some improbable allegations, and dismiss the claim.") (internal quotation marks and citations omitted).

This action may very well be one of those rare circumstances where a party's deposition testimony should be discredited.  Here, the Plaintiff lied about discarding the marijuana:

> Q: So in this incident with Deputy Long and Deputy Broce, you contend that you did not have any drugs whatsoever?
>
> A: Right.
>
> Q: By drugs, would you include in that marijuana?
>
> A: Yes, sir.
>
> Q: You contend that you did not have marijuana?
>
> A: I did not.

(Doc. 19, Deposition of Husam Mathews, at 126).  Further, when faced with video evidence, the Plaintiff chose to stick to his story:

> Q: All right.  I played it to 16:43.  You can hear yourself talking there?
>
> A: Uh-huh.
>
> Q: What were you saying?
>
> A: I told the officers that I didn't have any marijuana.  I told them I had no marijuana.  None.
>
> Q: And that's your story today?
>
> A: Yeah.
>
> Q: And if that's untrue, then that would make them not believe the rest of what you're saying.  True?
>
> Mr. Goldberg: I object to that.  Don't answer that question.  It's argumentative.

> A: That's untrue. No, that's not true.
>
> Q: Well, if you're lying about that point –
>
> A: Why am I –
>
> Mr. Goldberg: Hold on a second. I'm going to object to any of those questions. They're argumentative.
>
> Q: Okay. You can object.
>
> Mr. Goldberg: Go ahead.
>
> Q: If you're lying about that point, why should anybody else believe you about anything else you said?
>
> A: I'm not lying.
>
> Q: I'm just saying if you are –
>
> A: Uh-huh.
>
> Q: -- why should anyone believe you about anything else you say.
>
> A: Because the officer tried to shoot and kill me still excessively with his taser in this visual, this evidence.

(Doc. 19, Deposition of Husam Mathews, at 203-04). The Plaintiff's last answer brings the Court to another reason to discredit his testimony. In addition to his lie about the marijuana, the Plaintiff testified that he was tased in his mid-back for approximately 45 seconds. (Doc. 19, Deposition of Husam Mathews, at 181). Despite the Plaintiff's contention that the Defendant tried to shoot and kill him with the TASER, the Plaintiff was surprised that the TASER even left a mark. In fact, the Plaintiff primarily was relieved because he thought he had not been shot with a firearm, a belief that caused the Parties to share a laugh. Most importantly, the Plaintiff's testimony significantly conflicts with data from the TASER report.

Consequently, the Plaintiff attempts to challenge the TASER report.  The Plaintiff's argument is not that he was tased while handcuffed; his argument, based on his deposition testimony, is that "[e]ven after Mr. Mathews was tased, he was tased *a number of times* by Mr. Broce to effectuate the arrest."  (Doc. 22, at 6) (emphasis added).  The Defendant claims the Plaintiff was tased once in probe mode and once in drive stun mode, which is consistent with data stored on the TASER.  The Defendant stated in his declaration that a neighboring county had the "specialized wire" required to download data from the TASER used on the Plaintiff and that he was present when the data was downloaded.  (Doc. 15-2, Declaration of Michael Broce, at ¶ 9).  The Plaintiff challenges the TASER report on the grounds that it is hearsay, but hearsay only applies to "a *person's* oral assertion, written assertion, or nonverbal conduct, if the person intended it as an assertion."  Fed. R. Evid. 801(a) (emphasis added); *see also United States v. Lamons*, 532 F.3d 1251, 1263-64 (11th Cir. 2008)[11] ("We have no difficulty concluding that the statements in question are the statements of machines, not statements of persons.  Lamons makes much of the fact that it was Agent Lazarus who requested the production of the evidence; but the relevant point is that no human intervened at the time the raw billing data was 'stated' by the machine—that is, recorded onto Sprint's data reels."); Mueller, Christopher B. & Kirkpatrick, Laird C., 4 FED. EVID. § 8:13 ("Under Fed. R. Evid. 801(a), a statement is something uttered by 'a person,' so nothing 'said' by a machine or an animal is hearsay, and an objection on this ground is ineffective against evidence of the output of machines or the behavior of animals.").  Here, the Plaintiff, like the defendant in *Lamons*, attempts to challenge the handling of the data after it was created, but the relevant point is that no

---

[11] *Lamons* is included in the notes to Fed. R. Evid. 801 in the sections on "Statements within rule" and "Computer Records, particular types of evidence."

human intervened in the creation of the data. The Plaintiff did not argue the TASER was working improperly on the day of the incident, and based on the one-second test use later that day, it appears that it was working. In sum, the Plaintiff's challenge of the TASER report fails.

Given that the readings of the TASER report show that the device was only used twice on the Plaintiff, the Court must determine the mode of the subsequent use. The Eleventh Circuit noted that drive stun mode is "a much less serious application [because it] does not override the central nervous system and does not disrupt muscle control."[12] *Hoyt v. Cooks*, 672 F.3d 972, 980 (11th Cir. 2012). Here, Long testified that the electricity in probe mode runs for 5 seconds. (Deposition of Gary Long, at 59-60). Consistent with this fact, the first use of the TASER was 5 seconds. The second use lasted 7 seconds, which suggests it was used in drive stun mode. Further, the Defendant could only fire once in probe mode. Although it could then be used in drive stun mode, to use the TASER in probe mode again, the Defendant would have had to reload the cartridge. (Deposition of Gary Long, at 59); (Doc. 23, Deposition of Michael Broce, at 55-56). The Defendant testified that he did not remove his cartridge until after the incident. (Doc. 23, Deposition of Michael Broce, at 56). The only way the Defendant could have used the TASER more than once in probe mode would be if the probes had stuck in the Plaintiff's arm and the Defendant waited 5 seconds to use it again. (Deposition of Gary Long, at 59-60). Of course, if that happened, there would only be wounds to his arm.

---

[12] In addition to the Eleventh Circuit discussing the significance between TASER modes, the distinction matters with regard to Butts County Sheriff's Office policy. The Butts County Sheriff's Office has a policy that states, "At no time will a person who is handcuffed be tased unless this person is attempting to escape, damage property or harm another person. When it is necessary to tase someone who is handcuffed the proper procedure will be to take the cartridge off and use the taser as a stun gun to retain control of the individual." (Doc. 22-2, at 6). Thus, the Defendant had a greater degree of discretion with regard to use in drive stun mode.

Thus, the Defendant used the TASER once in probe mode and once in drive stun mode.

The Plaintiff cites no case that provides the Defendant with fair warning that the foregoing conduct deprived the Plaintiff of a constitutional right.  Even if the Plaintiff is given the full benefit of his testimony, including his lies and hyperbole, he has not satisfied his burden of proving that the Defendant violated a clearly established right on April 8, 2009.[13]

Accordingly, the Defendant is entitled to qualified immunity, and the Motion is granted on the Plaintiff's federal excessive force claim.

### C. State Law Claims

State employees may only be sued for performing their discretionary functions if they acted with "actual malice or with actual intent to cause injury in the performance of their official functions."  Ga. Const. Art. 1, § 2, ¶ IX(d).  Georgia courts recognize that arrests by deputies are discretionary functions.  *Selvy v. Morrison*, 292 Ga. App. 702, 665 S.E.2d 401 (2008); *Reed v. DeKalb County*, 264 Ga. App. 83, 589 S.E.2d 584 (2003).

Here, with regard to excessive force, the Plaintiff has failed to show any actual malice by the Defendant to defeat official immunity.  As stated above, the record is consistent with TASER use once in probe mode and once in drive stun mode.  There is no allegation that any other force was used against the Plaintiff or that the Defendant acted

---

[13] The fact that the Plaintiff cannot point to any clearly established law is not necessarily dispositive.  In rare cases, liability can be imposed if a constitutional violation rose to the level of "obvious clarity."  "For there to be such 'obvious clarity' that an officer's conduct would violate a clearly established right even in the absence of caselaw, the conduct must have been 'so far beyond the hazy border between excessive and acceptable force that [the officer] had to know he was violating the Constitution.'"  *Hoyt v. Cooks*, 672 F.3d at 978 (11th Cir. 2012) (quoting *Smith v. Mattox*, 127 F.3d 1416, 1419 (11th Cir. 1997)).  Although the Plaintiff cites the *Graham* factors, which are used in "obvious clarity" analysis, he does not specifically argue the "obvious clarity" standard applies.  In any event, these facts fall well short of the type of conduct that meets the

with intent to harm the Plaintiff.  Indeed, the Defendant saved the Plaintiff from serious injury or death by quickly moving him away from the fast lane.

With regard to the Plaintiff's battery claim, it is barred by O.C.G.A. § 17-4-20(b), which states "Nothing in this Code section shall be construed so as to restrict such sheriffs or peace officers from the use of such reasonable nondeadly force as may be necessary to apprehend and arrest a suspected felon or misdemeanant."  As stated above, the use of the TASER was not unreasonable.

### III.    CONCLUSION

For the foregoing reasons, the Motion is **GRANTED.**

SO ORDERED, this 15th day of August, 2012.

>S/ Marc T. Treadwell
>MARC T. TREADWELL, JUDGE
>UNITED STATES DISTRICT COURT

---

"obvious clarity" standard.  *See, e.g., Oliver v. Fiorino*, 586 F.3d 898 (11th Cir. 2009) ("obvious clarity" standard applied to man who died after being tased at least eight times in probe mode).